UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IFEDOO NOBLE ENIGWE, | ) | CASE NO.  4:06 CV 1578 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| UNITED STATES OF AMERICA, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Before the court is pro se plaintiff Ifedoo Noble Enigwe's complaint filed on June 27, 2006.  In his complaint he alleges that the defendant United States is liable for damages because "he could be exposed to future diseases" resulting from an incident at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton).  He invokes this court's jurisdiction pursuant to the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2671 and seeks $3,500,000.00 in compensatory and punitive damages.

*Relevant Facts*

For reasons not set forth in the complaint, the medical supervisor at F.C.I. Elkton directed Mr. Enigwe to have his blood drawn.  He was taken to an MRI truck located at F.C.I.

Elkton for that purpose on November 19, 2003. When the MRI nurse attempted to draw Mr. Enigwe's blood she had difficulty locating a vein to insert the needle. Ms. Simpson, an x-ray technician at F.C.I. Elkton then volunteered to draw blood from Mr. Enigwe. After "poking Plaintiff repeatedly in search of a vein, she discovered that her finger was bleeding, so she aborted the procedure." (Compl. at 2.) Both Ms. Simpson and Mr. Enigwe were then taken to the F.C.I. Elkton medical department to have their "blood drawn for tests of diseases." (Compl. at 2.)

At the time of the blood was test, Ms. Simpson expressed concern that she may have contracted a disease from sharing a needle with Mr. Enigwe. He was questioned by the nurse about whether he engaged in "risky behaviours while incarcerated." At the time he felt like he was the only one "prone to carrying diseases because he was a prisoner living among men."

When he was subsequently contacted by the medical department on December 3, 2003, the supervisor advised that "everything is alright." He claims he felt vindicated and relieved to know that he "would not be punished for giving a staff member (Ms. Simpson) a disease." (Compl. at 3.) Although he never received a copy of Ms. Simpson's test results he left the department satisfied that the matter was resolved based on the information available at the time.

Almost two years after he received his blood test results, Mr. Enigwe was reading a pamphlet on November 9, 2005 that addressed the transmission and incubation of deadly blood-borne diseases that could be contracted by sharing a needle. The pamphlet noted that some of the diseases could take up to ten years to incubate in the blood. Six months after reading this pamphlet, Mr. Enigwe filed an Administrative Claim with the Department of Justice (DOJ) on June 6, 2006 seeking $3.5 million for personal injury he suffered on or about November 19, 2003.

Henry J. Sadowski, Regional Counsel for the DOJ, responded to Mr. Enigwe's claim

in a letter dated June 13, 2006. He advised the plaintiff that his tort claim was being rejected because Mr. Enigwe failed to submit it within the time restrictions set forth in the 28 U.S.C. § 2401(b). That statute provides, in relevant part, that if an action is not commenced within six months after the date of mailing or notice of final denial of a claim, it shall be forever barred.

Mr. Enigwe subsequently filed a complaint in this court arguing that his claim is, in fact, timely. It is his position that until he read the pamphlet on November 9, 2005 which explained that he could be exposed to diseases in the future, his claim had not yet accrued. In fact, he maintains that the medical supervisor deceived him when she said everything was alright. He asserts that it was his 'due diligence' which led him to discover that he could be at risk in the future and that it was on that date of discovery that his claim accrued.

*Standard of Review*

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief.[1] 28 U.S.C. §1915A; Onapolis v.

---

[1]The relevant statute provides:

> The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> 
> . . .
> 
> > (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > 
> > > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted
> 
> (continued...)

Lamanna, 70 F.Supp.2d 809 (N.D.Ohio 1999)(if prisoner's civil rights complaint fails to pass muster under screening process of Prison Litigation Reform Act (PLRA), district court should sua sponte dismiss complaint); see Siller v. Dean, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000); see also Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

*28 U.S.C. §2401*

The exclusive remedy for torts committed by federal employees in the course of their duties is the Federal Tort Claims Act (FTCA). However, unless a plaintiff has first timely exhausted his administrative remedies, a district court has no subject matter jurisdiction over the FTCA claim. See McNeil v. United States, 508 U.S. 106, 113 (1993)("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.") Section 2401 contains a two-year limitation period for claims brought under the FTCA, providing that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). This administrative exhaustion rule is a jurisdictional requirement which cannot be waived. See Millares v. United States, 137 F.3d 715, 720 (2d Cir.1998); Morales v. United States, 38 F.3d 659, 660 (2d Cir.1994); Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir.), cert. denied 464 U.S. 864 (1983). Moreover, because the FTCA constitutes a waiver of the sovereign immunity of the United

---

[1](...continued)
28 U.S.C. §1915A(b)(1)(2003)

States, the statutory requirements for pursuing a claim must be adhered to strictly. Keene, 700 F.2d at 841; Schunk v. United States of America, 783 F. Supp. 72, 81 (E.D.N.Y.1992).

Accrual of an FTCA claim generally begins at the time the injury or harm is inflicted. The statute of limitations begins to run "when the plaintiff knows both the existence and cause of his injury." United States v. Kubrick, 444 U.S. 111, 120(1979); Kronisch v. United States, 150 F.3d 112, 121 (2d Cir.1998). However, in exceptional situations, "courts have made a 'diligence-discovery' exception to this rule, which delays accrual for any plaintiff who is 'blamelessly ignorant of the existence or cause of his injury.'" Gittens v. The City of New York, No. 97 Civ. 5794, 1999 WL 688455, at *2 (S.D.N.Y. Aug. 30, 1999) (quoting Barrett v. United States, 689 F.2d 324, 327 (2d Cir.1982)).

Mr. Enigwe maintains that it was only through due diligence that he discovered the pamphlet on November 9, 2005 that explained all of diseases he could potentially contract within the next seven years. Therefore, he believes his claim should accrue from that date of discovery, versus the date on which he was pricked with the needle. Relying on Norfolk & Western Railway Co. v. Ayers, et al, 538 U.S. 135 (2003), Mr. Enigwe reasons that as of November 9, 2005 he had a reasonable fear that he would contract a disease in future. He believes that he may have been exposed to one of many diseases that could have been "incubating" in Ms. Simpson's blood on the day she recklessly injected her blood into his blood stream. Moreover, "because of the physical injury of the needle pokes on Plaintiff's arms, and the sharing of needle between Plaintiff and Ms. Simpson, Plaintiff now has fear that one day, he would contract future deadly diseases as listed

above."[2] (Compl. at 5.)

Under the diligence-discovery exception, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause," Kronisch v. United States, 150 F.3d 112, 121 (2d Cir.1998); see United States v. Kubrick, 444 U.S. 111 (1979) (holding that a plaintiff's medical malpractice claim accrues when he learns of the existence and probable cause of the injury). A claimant's duty to inquire applies even when the government may have engaged in concealment of facts. Ball v. Union Carbide Corp., 385 F.3d 713, 724 (6th Cir. 2004). In the present case, however, it is not appropriate for Mr. Enigwe to invoke the diligence-discovery exception because he has failed to allege an actual injury.

*Lack of Standing*

What distinguishes Mr. Enigwe's case from Norfolk & Western, and defeats this court's jurisdiction, is the reality that he does not have any injury in fact. Unlike the present case, Norfolk did not involve a FTCA claim but was filed by former railroad employees against the railroad in West Virginia state court under the Federal Employers' Liability Act (FELA). The workers alleged that the railroad negligently exposed them to asbestos and thereby caused them to contract the occupational disease asbestosis. The Supreme Court, held that under the FELA plaintiffs were entitled to mental anguish damages resulting from the fear of developing cancer inasmuch as they were suffering from the actionable injury asbestosis caused by work-related exposure to asbestos. Even though the Court permitted the plaintiffs to recover damages for fear of cancer under FELA without proof of physical manifestations of the claimed emotional distress,

---

[2]In his complaint he maintains that the pamphlet suggested that by sharing a needle he could contract HIV/AIDS, Lupus, Herpes, Herpetitis A, B and C, syphilis and others.

it set forth: "We affirm only the qualification of an asbestosis sufferer to seek compensation for fear of cancer <u>as an element of his asbestosis-related pain and suffering damages</u>." <u>Id.</u> at 157. Thus, it clear that the <u>Norfolk</u> plaintiffs were suffering from an actual injury at the time their complaint was filed.

A party invoking federal jurisdiction bears the burden of satisfying Article III's standing requirements. <u>See</u> <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S. 215, 231 (1990). The elements of standing require that the plaintiff must show (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992). The Court has explicitly held that "[a]llegations of possible future injury do not satisfy the requirements of Art. III." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983). A threatened injury must be 'certainly impending' to constitute injury in fact." <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990). "An Article III injury ... must be more than a possibility.... The threat of injury must be both real and immediate." <u>Essence, Inc. v. City of Federal Heights</u>, 285 F.3d 1272, 1282 (10th Cir.2002). Mr. Enigwe does not allege that he "has sustained or is immediately in danger of sustaining some direct injury." <u>Lyons</u>, 461 U.S. 101-02. It is only after satisfying the "injury in fact" element, that a plaintiff can then allege that this injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984). Although Mr. Enigwe is prepared to assign blame and collect damages from the defendant, without sustaining an actual injury, there can be no causation and redressability. <u>Lujan</u>, 504 U.S. at 568-71 (finding that redressability presented a

particular obstacle to standing).

Based on the foregoing, this action is dismissed pursuant to §1915A. Further, the court CERTIFIES pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: August 11, 2006           *s/     James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE